# EXHIBIT A

# EXHIBIT A

1

2  Code No.
   THE O'MARA LAW FIRM, P.C.
3  WILLIAM M. O'MARA (Nevada Bar No. 00837)
   DAVID C. O'MARA (Nevada Bar No. 8599)
4  311 East Liberty Street
   Reno, NV 89501
5  Telephone:  775/323-1321
   Facsimile:   775/323-4082

6  Attorneys for Plaintiff

7       IN THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

8                    IN AND FOR CARSON CITY

9  ELLIOT F. DWORKIN                    )
10                                       )
                        Plaintiff,       )  Case No. 10OC 00529 1B
11                                       )
        vs.                              )  Dept No.  I
12                                       )
   DEJUN ZOU, JIANPING QIU, XIE          )
13 QUAN, KENNITH JOHNSON, ZEJIN          )  **VERIFIED SHAREHOLDER DERIVATIVE**
   LI, BEN WANG, YI LIU, and YU          )            **COMPLAINT**
14 LI, and DOES I through X.             )
15                                       )       **DEMAND FOR JURY TRIAL**
                        Defendants       )
16 RINO INTERNATIONAL CORPORATION,       )
   a Nevada Domestic Corporation.        )
17                                       )
                        Nominal          )
18                      Defendant        )
19 ─────────────────────────────────────

20       Plaintiff, pursuant to Rule 23.1 of the Nevada Rules of Civil

21 Procedure, as and for his verified shareholder derivative

22 complaint, by his undersigned attorneys, alleges upon personal

23 knowledge as to himself and his acts, and upon information and

24 belief as to all other matters, as follows:

25                        **NATURE OF THE ACTION**

26       1.   This is a shareholder derivative action brought on behalf

27 of RINO International Corporation ("RINO" or the "Company"),

28 seeking to recover for damages caused to the Company by its

1  directors and/or senior officers who breached their fiduciary
2  obligations to the Company.  Named as Nominal Defendant is the
3  Company and its directors and/or senior executive officers.

**JURISDICTION**

5  2.  This Court has jurisdiction over this action because they
6  conduct business in Nevada and/or are citizens of Nevada.  Rino
7  International Corporation is incorporated under the laws of the
8  State of Nevada and conducts upon information and belief, conducts
9  business in Nevada.

10  3.  Venue is proper in this District because the conduct at
11  issue took place and had an effect in this district.

**PARTIES**

13  4.  Plaintiff is and was a Company shareholder during the
14  period in which the wrongful conduct alleged herein occurred
15  through the present. Plaintiff resides in Summit County, Ohio.

16  5.  Defendant Dejun Zou ("Zou") has been a Director and the
17  Chief Executive Officer of the Company since October 2007.
18  Defendant Zou is the founder of RINO and has been a Director and
19  its Chief Executive Officer since 2003.

20  6.  Defendant Jianping Qiu ("Qiu") has been the Chairman of
21  the Board of the Company since March 2008.  Defendant Qiu has been
22  a Director and Chairman of the Board of RINO since 2003.  Qui is
23  married to Zou.

24  7.  Defendant Xie Quan ("Quan") has been a Director of the
25  Company since March 2008.  Quan serves on the Company's Audit
26  Committee.

27
28

8.   Defendant Kennith Johnson ("Johnson"), CPA, has been a Director of the Company since March 2008. Johnson is Chairperson of the Company's Audit Committee.

9.   Defendant Zejin Li ("Z. Li") has been a Director of the Company since October 2010.

10.   Defendant Ben Wang ("Wang") was, at all relevant times, Chief Financial Officer ("CFO") of RINO since April 2010.

11.   Defendant Yi Liu (a/k/a Jenny Liu) ("Liu") was, at all relevant times, CFO of RINO until April 2010.

12.   Defendant Yu Li ("Y. Li") was, at all relevant times, Controller of RINO since November 14, 2009 after having previously served as the Company's accounting manager since its inception.

13.   Nominal Defendant RINO is a Nevada corporation with its principal executive offices located at 11 Youquan Road, Zhanqian Street, Jinzhou District, Dalian, People's Republic of China 116100.

14.   Defendants Zou, Qiu, Quan, Johnson and Z. Li are referred to herein as the "Director Defendants."

15.   Defendants Zou, Wang, Liu and Y. Li are referred to herein as the "Officer Defendants."

16.   The Director Defendants and the Officer Defendants are collectively referred to as the "Individual Defendants."

17.   The Individual Defendants together with RINO are referred to herein as the "Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

18.   By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants

1   owed the Company and its shareholders the fiduciary obligations of
2   good faith, trust, loyalty, and due care, and were and are required
3   to use their utmost ability to control and manage the Company in a
4   fair, just, honest, and equitable manner. The Individual
5   Defendants were required to act in furtherance of the best
6   interests of the Company and its shareholders so as to benefit all
7   shareholders equally and not in furtherance of their personal
8   interest or benefit. Each director and officer of the Company owes
9   to the Company and its shareholders the fiduciary duty to exercise
10  good faith and diligence in the administration of the affairs of
11  the Company and in the use and preservation of its property and
12  assets, and the highest obligations of fair dealing.

13      19.    The Individual Defendants, because of their positions of
14  control and authority as directors and/or officers of the Company,
15  were able to and did, directly and/or indirectly, exercise control
16  over the wrongful acts complained of herein.

17      20.    To discharge their duties, the Individual Defendants
18  were required to exercise reasonable and prudent supervision over
19  the management, policies, practices, and controls of the Company.
20  By virtue of such duties, the Individual Defendants were required
21  to, among other things:

22          a.    exercise good faith to ensure that the affairs of
            the Company were conducted in an efficient, business-like
23          manner so as to make it possible to provide the highest
            quality performance of their business; exercise good
24          faith to ensure that the Company was operated in a
            diligent, honest and prudent manner and complied with all
25          applicable federal and state laws, rules, regulations and
            requirements, and all contractual obligations, including
26          acting only within the scope of its legal authority;

27          b.    when placed on notice of improper or imprudent
            conduct by the Company and/or its employees, exercise
28          good faith in taking action to correct the misconduct and
            prevent its recurrence; and

-4-

    c.   maintain and implement an adequate system of controls and information systems, such that no officer, director or employee of the Company would make false statements about RINO to the securities markets or would be able to misappropriate internal confidential information for his or her own benefit and profit, by insider stock trading or otherwise.

21.   Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors ("Board") meetings and committees thereof and via reports and other information provided to them in connection therewith.

22.   Each of the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware, or deliberately disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements.

23.   As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Securities Exchange Act of 1934 and, during the relevant period, traded on the Nasdaq, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue.

24.   The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or deliberately disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with RINO, each of the Individual Defendants had access to the adverse undisclosed information about RINO's business prospects and financial condition and performance as particularized herein and knew (or deliberately disregarded) that these adverse facts rendered the positive representations made by or about RINO and its business issued or adopted by the Company materially false and misleading.

25.   The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company,

1  were able to and did control the content of the various SEC
2  filings, press releases and other public statements pertaining to
3  the Company during the relevant period.   Each Individual Defendant
4  was provided with copies of the documents alleged herein to be
5  misleading prior to or shortly after their issuance and/or had the
6  ability and/or opportunity to prevent their issuance or cause them
7  to be corrected.   Accordingly, each of the Individual Defendants is
8  responsible for the accuracy of the public reports and releases
9  detailed herein and are therefore primarily liable for the
10  representations contained therein.

11                     **SUBSTANTIVE ALLEGATIONS**

12      26.  During the relevant period, the Individual Defendants
13  caused the Company to issue a series of false and misleading
14  statement about the Company's revenues and sales of desulfurization
15  ("FGD") and other environmental equipment to Chinese steel mills.
16  These false and misleading statements have exposed the Company to
17  possible securities fraud violations and a barrage of class action
18  lawsuits by shareholders.

19      27.  On March 31, 2009, the Company filed its annual report
20  for the year ended December 31, 2008 on form 10-K with the SEC.
21  The 10-K was signed by Defendants Zou, Qui, Quan and Johnson and,
22  pursuant to Sarbanes-Oxley Act of 2002 ("SOX"), was separately
23  certified by Zou and Qui.   In the 10-K, the Company claimed to have
24  generated $139.3 million in revenue during fiscal year 2008.

25      28.  On November 13, 2009 the Company issued a press release
26  entitled, "RINO International Corp. Announces Record Third Quarter
27  2009 Financial Results." Therein, the Company, in relevant part,
28  stated:

RINO International Corp. (OTC Bulletin Board: RINO), which through its subsidiaries and controlled affiliates in the People's Republic of China (collectively, the "Company" or "RINO"), designs, manufactures, installs and services proprietary and patented wastewater treatment, desulphurization equipment, and high temperature anti-oxidation systems for iron and steel manufacturers in the People's Republic of China ("PRC"), today announced the Company's financial results for the third quarter of 2009.

29. On November 13, 2009, RINO filed its Quarterly Report on Form 10-Q with the SEC for the 2009 fiscal third quarter. The Company's Form 10-Q was signed by Defendant Zou, and reaffirmed the Company's financial results previously announced on November 13, 2009. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Zou and Liu.

30. On March 31, 2010, the Company issued a press release entitled, "RINO International Corp. Announces Record 2009 Revenue and Net Income."

31. On March 31, 2010, RINO filed its Annual Report on Form 10-K with the SEC for the 2009 fiscal year. The Company's Form 10-K was signed by Defendants Zou, Liu, and Li, and reaffirmed the Company's financial results previously announced on March 31, 2010. The Company's Form 10-K also contained Sarbanes-Oxley required certifications, signed by Defendants Zou and Liu

32. On May 14, 2010, RINO filed its Quarterly Report on Form 10-Q with the SEC for the 2010 fiscal first quarter. The Company's Form 10-Q was signed by Defendant Zou. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Zou and Wang.

33. On May 17, 2010, the Company issued a press release entitled, "RINO International Corp. Announces First Quarter 2010 Financial Results."

34.   On August 16, 2010, RINO filed its Quarterly Report on Form 10-Q with the SEC for the 2010 fiscal second quarter. The Company's Form 10-Q was signed by Defendant Zou, and reaffirmed the Company's financial results previously announced on August 16, 2010. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Zou and Wang.

35.   The statements contained above were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that certain customers did not purchase FGD systems as the Company had previously claimed; (2) that the Company's financial results reported to China's State Administration of Industry and Commerce were substantially less than the financial results the Company reported to the public and contained in the financial statements RINO filed with the SEC; (3) that the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times. Disclosures at the End of the Class Period.

36.   On November 10, 2010, a research firm published a research report on RINO. A summary of the report on the research firm's website states:

> RINO claims to be the leader in selling desulfurization ("FGD") and other environmental equipment to Chinese steel mills. It reported 2009 revenue of $193 million. In reality its revenue is under $15 million, and its management has diverted tens of millions of dollars for its own use. We value RINO based on the cash we believe remains in the company after the most recent raise.
>
> • RINO's FGD sales (60% to 75% of revenue) are much lower than it claims. We found that many of its customer relationships do not exist.
>
> • Chinese regulatory filings show that RINO's consolidated 2009 revenue was only $11 million, or 94.2%

lower than it reported in the US. We show that the Chinese numbers are credible.

• RINO's accounting has serious flaws that are clear signs of cooked books.

• RINO's management is draining cash from the company for its own business and personal uses. The management is in flagrant breach of its VIE agreements, which require it to pay income to RINO (as opposed to taking it).

• RINO's balance sheet has an astonishingly small amount of tangible assets for a manufacturer. Rather, it is filled with low quality "paper" assets that balance out the inflated earnings, and likely hide leakage.

• RINO is not the industry leader it claims to be in the steel sinter FGD system market. Rather, it is an obscure company in a crowded field, and is best known for its failed projects. Its reported margins are two to three times what they really are. Its technology is sub-par.

• We are not sanguine about management "borrowing" $3.2 million to purchase a luxury home in Orange County, CA the day that RINO closed its $100.0 million financing.

37.  On this news, shares of RINO declined $2.34 per share, more than 15%, to close on November 10, 2010, at $13.18 per share, on unusually high volume.

38.  On November 11, 2010, the Company issued a press release entitled, "RINO Comments on Muddy Waters Allegations." Therein, the Company, in relevant part, stated:

DALIAN, China, Nov. 11, 2010 /PRNewswire-Asia-FirstCall/ -- RINO International Corporation (the "Company" or "RINO") (Nasdaq:RINO), a leading provider of clean technology solutions to China's iron and steel industry, commented today on the allegations against the Company made by Muddy Waters, LLC ("Muddy Waters") concerning RINO's business practices.

RINO takes its responsibilities to investors very seriously and has launched an internal review of Muddy Waters' allegations. RINO looks forward to providing investors with a timely and detailed response to the allegations upon completion of its internal review.

RINO is scheduled to report its unaudited financial results for the third quarter ended September 30, 2010, after the U.S. market closes on November 15, 2010. RINO's management will hold an earnings conference call at 7 PM

1    on November 16, 2010 U.S. Eastern Time (8 AM on November
     17, 2010 Beijing/Hong Kong time), at which time
2    management will comment on the allegations to the extent
     possible based on the progress of internal review but
3    will not hold a question and answer session.

4    39.   On this news, shares of RINO declined $2.08 per share,

5    more than 15%, to close on November 11, 2010, at $11.10 per share,

6    on unusually high volume.

7    40.   On November 15, 2010, the Company issued a press release

8    entitled, "RINO Announces Third Quarter 2010 Financial Results."

9    41.   Thereafter, an analyst at Canaccord Genuity cut its

10   rating on RINO to "Sell," citing the allegations of fraud and the

11   Company's initiation of an internal review. According to a

12   Bloomberg news story:

13        Nov. 15 (Bloomberg) -- Rino International's real business
          may be smaller than reported, Canaccord Genuity analyst
14        Michael Deng said in a note.

15        *    Allegations of fraud from Muddy Waters report may be
          hard to clear, Deng said
16
          *    Muddy Waters report claimed 6 of 9 FGD customers
17        denied hiring RINO, Canaccord's checks with Yueyufeng
          also contradict RINO's explanation: Deng
18
          *    RINO launched internal review of Muddy Water
19        allegations Nov. 11

20        *    RINO rated sell, no PT at Canaccord Genuity

21        *    1 buy, 1 hold, 1 sell, avg. PT $29: Bloomberg data

22        *    RINO down 32% in a week, Nasdaq 100 down 2.3%

23   42.   On this news, shares of RINO declined $3.46 per share, or

24   31.43%, to close on November 15, 2010, at $7.55 per share, on

25   unusually high volume.

26   43.   On November 19, 2010, RINO filed a Form 8-K with the SEC

27   warning the public that it could not rely on RINO's previously

28   issued financial statements. According to the 8-K, the Company's

1  Board concluded that RINO's previously-issued audited financial
2  statements for its fiscal years ended December 31, 2008 and 2009,
3  previously included in RINO's annual reports on Form 10-K, as well
4  as its interim unaudited financial statements included in RINO's
5  quarterly reports on Form 10-Q for the periods ended March 31, 2008
6  to September 30, 2009, should no longer be relied on.

7       44.  RINO's Board also concluded that the Company's previously
8  issued interim unaudited financial statements included in RINO's
9  quarterly reports on Form 10-Q for the periods March 31, 2010, June
10 30, 2010, and September 30, 2010 should no longer be relied on
11 because these financial statements incorporate results from 2008
12 and 2009.

13      45.  The Company will have to restate its financial
14 statements. As a result, trading in the Company's stock was halted.

15      46.  This announcement came on the heels of a November 17,
16 2010 letter the Company received from its outside public auditors,
17 Frazer Frost LLP ("Frazer Frost"), advising the Company that it was
18 required under U.S. accounting laws to notify the public that the
19 Company's financial statements could no longer be relied upon.
20 Frazer Frost came to this conclusion when it learned from Defendant
21 Zou that RINO did not actually enter into two of six contracts that
22 had been the subject of recent public speculation and commentary.
23 Defendant Zou also explained to the auditors that "there might be
24 problems with 20-40% of [the Company's other contracts]."   RINO
25 Form 8-K, filed 11/17/10.

26      47.  RINO's stock price has declined substantially since news
27 first started to break about the possibility the Company's reported
28 revenues were based on "phony" contracts.  On November 10, 2010,

1  when this news became public, RINO's shares dropped by 15% to close

2  at $13.18 per share on high trading volume.  RINO shares declined

3  again on November 11, 2010 by another $2.08, to close at $11.10 per

4  share, also on high trading volume. The stock price declined

5  further on RINO's warning to public investors that they could not

6  rely on the Company's financial statements.  On November 17, 2010,

7  after news of Frazer Frost's letter to the Company became public,

8  the Company's stock slid to $6.07 per share before trading in the

9  stock was halted.

10      48.  As a result of the Defendants' wrongdoing, the Company

11  and its senior officers and directors have been named as defendants

12  in class action lawsuits alleging violations, among others, of the

13  anti-fraud provisions of the federal securities laws.

14              **DEFENDANTS' BREACHES OF FIDUCIARY DUTIES**

15      49.  As fiduciaries of the Company and by reason of their

16  ability to control the business and corporate affairs of RINO, the

17  Individual Defendants owed the Company obligations of fidelity,

18  trust, loyalty and care, were required to use their utmost ability

19  to control and manage the Company's affairs in a fair, just, honest

20  and equitable manner, and were required to act in furtherance of

21  the best interests of the Company and its shareholders and not in

22  their own personal interest and benefit.

23      50.  As senior officers and/or directors of the Company, the

24  Individual Defendants owed duties to the Company to conduct its

25  affairs in good faith, in furtherance of the best interest of the

26  Company and its shareholders and within the bounds of the law.

27      51.  In contravention of those duties and obligations, the

28  Individual Defendants caused RINO to engage in unlawful conduct

1  which has severely harmed the Company.  The Company has exposed

2  itself to a barrage of private litigation, and enormous legal and

3  other professional expenses in connection with possible regulatory

4  investigations, as well as to costs related to the defense of these

5  actions.

6       52.  The Company's shareholders have brought suit for

7  violations of the federal securities laws as a result of the

8  artificial inflation of the Company's stock by the Company's false

9  and misleading announcements.  The Company is now subject to

10 potential civil judgments totaling millions of dollars, in addition

11 to the substantial legal and professional costs to be incurred in

12 having to defend those actions.

13      53.  The Company's reputation has been severely damaged.

14                    **DEMAND WOULD BE FUTILE**

15      54.  Plaintiff brings this action derivatively in the right

16 and for the benefit of RINO to redress injuries suffered and to be

17 suffered by RINO as a result of the breaches of fiduciary duty by

18 the Individual Defendants.  This is not a collusive action to

19 confer jurisdiction on this Court which it would not otherwise

20 have.

21      55.  Plaintiff will adequately and fairly represent the

22 interests of RINO and its shareholders in enforcing and prosecuting

23 its rights.

24      56.  Plaintiff is a holder of RINO common stock and was a

25 holder of such stock during the period in which the Defendants'

26 wrongful course of conduct alleged herein was occurring through the

27 present.

28

57.   As a result of the facts set forth herein, Plaintiff, pursuant to Section 88A.410 of the Nevada Revised Statutes, has not made a demand upon the Company's Board to institute this action against the Individual Defendants.   Such a demand would be a futile and useless act because a majority of the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

58.   The Board, which currently consists of the five Director Defendants exhibited a sustained and systematic failure to fulfill their fiduciary duties by actively participating or acquiescing in the wrongdoing alleged herein and/or by failing to implement adequate controls and procedures necessary to reasonably assure that the wrongdoing alleged herein did not occur.   Such failures could not have been an exercise of good faith business judgment.

59.   The Company concedes that Defendants Zou and Qiu lack independence.   Indeed, they are identified by the Company as "non-independent directors."   Moreover, Defendants Johnson and Quan (as members of the Audi Committee) cannot be considered independent because the Company's admitted lack of internal controls led to the problems complained of herein and to the claims being asserted against them on behalf of the Company.   Accordingly, four of the five Board members lack independence and thus excuse any pre-suit demand.

60.   The Board participated in the drafting, preparation, and/or approval of the various public communications complained of herein, and were aware of, and/or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.   Because of

1  their Board membership and/or executive and managerial positions
2  with RINO, each of the members of the Board had access to the
3  undisclosed information about RINO's business prospects and as
4  particularized herein knew (or recklessly disregarded) that the
5  positive representations made by or about RINO, its business and
6  its business prospects were materially false and misleading.

7      61.  The Director Defendants, because of their positions of
8  control and authority as officers and/or directors of the Company,
9  were able to and did control the content of the Company's
10  statements during the relevant period.  Each Director Defendant was
11  provided with copies of the documents alleged herein to be
12  misleading prior to or shortly after its issuance and/or had the
13  ability and/or opportunity to prevent its issuance or cause it to
14  be corrected.  Accordingly, each of the Individual Defendants was
15  responsible for the accuracy of the press release and the
16  representations contained therein.

17      62.  The Board had a responsibility and obligation to assure
18  that all press releases and filings of SEC reports were truthful
19  and not materially misleading and that proper controls and other
20  oversight procedures were in place that would have detected and
21  prevented the false and misleading statements put out by the
22  Company to the public that are described in this complaint but
23  failed to do so.

24      63.  The members of the Board have not only been complacent in
25  acting on behalf of the Company, but were necessary actors in the
26  improper conduct alleged herein, and have actively condoned and
27  facilitated a campaign of deceit upon the shareholders of the
28  Company through the Company's filings with the SEC, communications

1  with the public, and the sale of Company securities.   The Board

2  approved   option   compensation,   approved   officers'   incentive

3  compensation, and received their own stock options as compensation,

4  thereby personally benefitting from the improper conduct alleged

5  herein.   Moreover, they promoted the continuation of the scheme to

6  further their personal interests as directors of the Company and as

7  a   result   of   their   loyalty   to   the   Individual   Defendants.

8  Accordingly, the members of the Board cannot possibly be expected

9  to act independently in charging themselves with wrongdoing.

10     64.  All   of   the   Director   Defendants   face   a   substantial

11 likelihood of liability in this action because of their failure, as

12 directors and/or officers, to assure that a reliable system of

13 financial controls was in place and functioning effectively.   The

14 dramatic breakdowns and gaps in those controls were so widespread

15 and systematic that the entire Board faces substantial exposure to

16 liability.   These directors either knew or should have known that

17 violations of law were occurring and took no steps in a good faith

18 effort to prevent or remedy that situation, proximately causing

19 millions of dollars of losses for the Company.

20     65.  The   substantial   likelihood   of   liability   which   the

21 Individual Defendants face are for non-exculpated breaches of

22 fiduciary duty.   Among these non-exculpated breaches are the

23 Director   Defendants'   abdication   of   their   responsibility   to

24 implement adequate disclosure controls concerning the Company's

25 financial information.

26     66.  RINO has been and will continue to be exposed to

27 significant losses due to the wrongdoing complained of herein, yet

28 the Board has not filed any lawsuits against themselves or others

1  who were responsible for such wrongful conduct that caused the

2  filing of securities class actions against the Company.

3      67.  If the Board was to bring this derivative action against

4  themselves, they would expose their own recklessness and misconduct

5  which underlies the allegations against the Company contained in

6  the class action complaints for violations of the federal

7  securities laws which have been brought against the Company and

8  many of the Individual Defendants.   Such admissions would impair

9  the Company's defense of the class actions and greatly increase the

10 probability of their personal liability in the class actions, in an

11 amount likely to be in excess of any insurance coverage available

12 to the Defendants.

13                    **FIRST CLAIM FOR RELIEF**

14                    Breach of Fiduciary Duty

15                    (Against All Defendants)

16     68.  Plaintiff incorporates by reference all the prior

17 paragraphs as if fully set forth herein.

18     69.  Defendants had and have fiduciary duties of loyalty and

19 care to ensure that the Company adopts and follows a competent,

20 effective and honest business plan.   This plan is to ensure, among

21 other things, compliance with contracts, various state and federal

22 regulations regarding proper business practices, and state and

23 federal laws, including the abdication of their responsibility to

24 implement adequate disclosure controls concerning the Company's

25 financial information.

26     70.  Defendants breached their fiduciary duties of loyalty and

27 care by intentionally or recklessly approving, and/or deliberately

28

1   and knowingly being indifferent to announcements regarding the
2   Company's business.

3       71.   As a direct and proximate result, Defendants have exposed
4   the Company to millions of dollars in potential civil liability, as
5   well as significant legal fees, and untold compensatory and
6   punitive damages, for which they are liable to the Company.

7                      **SECOND CLAIM FOR RELIEF**

8                          Gross Negligence

9                  (Against All Defendants)

10       72.   Plaintiff incorporates by reference all the prior
11   paragraphs as if fully set forth herein.

12       73.   Defendants had and have fiduciary duties of loyalty and
13   care to ensure that the Company adopts and follows a competent,
14   effective and honest business plan.   This plan is to ensure, among
15   other things, compliance with contracts, various state and federal
16   regulations regarding proper business practices, and state and
17   federal laws.

18       74.   The Defendants breached their fiduciary obligations by
19   allowing and/or being indifferent to announcements regarding the
20   Company's business.   The Defendants acted with gross negligence,
21   recklessness and/or bad faith in breaching these fiduciary duties.

22       75.   As a direct and proximate result, Defendants have exposed
23   the Company to millions of dollars in potential civil liability, as
24   well as significant legal fees, and untold compensatory and
25   punitive damages, for which they are liable to the Company.

26

27

28

### THIRD CLAIM FOR RELIEF

Abuse of Control

(Against All Defendants)

76. Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

77. Defendants had and have the ability to control and influence RINO to act in the best interest of its shareholders, and to adopt and follow a competent, effective and legal business plan. This plan is to ensure, among other things, compliance with contracts, various state and federal regulations regarding proper business practices, and state and federal laws.

78. The Defendants misconduct alleged herein constituted an abuse of their ability to control and influence RINO, for which they are legally responsible.

79. As a direct and proximate result, Defendants have exposed the Company to millions of dollars in potential civil liability, as well as significant legal fees, and untold compensatory and punitive damages, for which they are liable to the Company.

### FOURTH CLAIM FOR RELIEF

Gross Mismanagement

(Against All Defendants)

80. Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

81. The Defendants, by their misconduct, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of RINO in a manner consistent with the operations of a publicly held corporation.

82.  As a direct and proximate result, Defendants have exposed the Company to millions of dollars in potential civil liability, as well as significant legal fees, and untold compensatory and punitive damages, for which they are liable to the Company.

**FIFTH CLAIM FOR RELIEF**

Breach of Contract

(Against all Defendants)

83.  Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

84.  Defendants, as officers and/or directors of RINO, contracted with RINO, in exchange for substantial compensation and professional prestige, to act in the best interest of RINO and to cause RINO to operate lawfully.

85.  Defendants, by the actions and omissions detailed herein, breached their contractual obligations and commitments to RINO to act in the best interest of RINO.

86.  As a direct and proximate result, Defendants have exposed the Company to millions of dollars in potential civil liability, as well as significant legal fees, and untold compensatory and punitive damages, for which they are liable to the Company.

87.  Defendants, as officers and/or directors of RINO, are liable to the Company for wasting these corporate assets.

**SIXTH CLAIM FOR RELIEF**

Waste of Corporate Assets

(Against all Defendants)

88.  Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

89.   As a result of the improper policies established and executed during the relevant period, and by failing to conduct proper supervision, Defendants have caused RINO to waste valuable corporate assets by improper transactions, payments of incentive awards to certain executive officers  and incurring potentially millions of dollars worth of legal liability and/or legal costs to defend certain misconduct.

### SEVENTH CLAIM FOR RELIEF

Contribution and Indemnification

(Against all Defendants)

90.   Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

91.   RINO is alleged to be liable to various persons and/or entities by virtue of the same facts or circumstances as are alleged to give rise to Defendants' liability to RINO.  As a result of Defendants' conduct, RINO is exposed to the potential payment of substantial penalties in connection with any governmental investigations and liability arising from civil judgments.

92.   RINO's alleged liability on account of the acts alleged herein arises in whole or in part from the intentional, reckless, disloyal and bad faith acts or omissions of Defendants as alleged above, and RINO is entitled to contribution and indemnification from each of the Defendants in connection with all such claims that have or may in the future be asserted against RINO by virtue of Defendants' misconduct.

### JURY DEMAND

93.   Plaintiff hereby demands a trial by jury.

1

## PRAYER FOR RELIEF

2        WHEREFORE, Plaintiff prays for judgment and relies as follows:

3        A        Determining that each Defendant breached his fiduciary
4    duty;

5        B.        Requiring the Defendants to account to the Company for
6    their and others' unlawful profits gained through compensation,
7    bonuses and/or insider trading during the relevant period and
8    establishing a constructive trust for their deposit;

9        C.        Awarding RINO compensatory damages against Defendants in
10    an amount to be determined at trial, together with prejudgment
11    interest at the maximum rate allowable by law;

12        D.        Awarding plaintiff costs and disbursements and reasonable
13    attorneys' and experts' fees and expenses; and,

14        E.        Granting such other and further relief as the Court may
15    deem just and proper.

16    DATED:  November 23, 2010        THE O'MARA LAW FIRM, P.C.

17

18

19                                   _____
                                     DAVID C. O'MARA, ESQ

20

21

22

23

24

25

26

27

28

**AFFIRMATION**
(Pursuant to NRS 239B.030)

The undersigned does hereby affirm that the preceding document filed in the above referenced matter.

___X___   Document does not contain the social security number of any person

-OR-

_____   Document contains the social security number of a person as required by:

_____ A specific state or federal law, to wit:

-or-

_____ For the administration of a public program

-or-

_____ For an application for a federal or state grant

-or-

_____ Confidential Family Court Information Sheet (NRS 125.130, NRS 125.230 and NRS 125B.055)

DATED:   November 23, 2010          THE O'MARA LAW FIRM, P.C.

_____
DAVID C. O'MARA, ESQ.